# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 15-670V
Filed: December 21, 2016

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *
| | | |
|---|---|---|
| NETTIE J. FOXX, | * | UNPUBLISHED |
| | * | |
| | * | |
| Petitioner, | * | |
| v. | * | |
| | * | Attorneys' Fees and Costs; |
| SECRETARY OF HEALTH | * | Contested; Range; Hourly Rate; |
| AND HUMAN SERVICES, | * | Forum Rate. |
| | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

*Randal Mathis, Mathis Donheiser & Jeter, Dallas, TX, for petitioner.*
*Adriana Teitel, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION GRANTING IN PART AND DENYING IN PART ATTORNEYS' FEES AND COSTS[1]

**Roth,** Special Master:

On June 29, 2015, Nettie Foxx ["Ms. Foxx" or "petitioner"] filed a *pro se* petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] ["Vaccine Act" or "Program"]. Petitioner alleged that the influenza vaccine that she received on October 15, 2015, caused her to develop complaints of right lower quadrant abdominal pain radiating into her lower back, thoracic and cervical regions. *See generally*, Petition [ECF No. 1]; Amended Petition, filed May 27, 2016 [ECF No. 24]. On August 30, 2016, petitioner filed a motion requesting dismissal of her petition. On September 19, 2016, the

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

undersigned issued a decision dismissing the petition. Petitioner applied for attorneys' fees and costs on November 2, 2016 ["Motion for Fees"].

After careful consideration, the undersigned has determined to **grant the request in part** for the reasons set forth below.

### I.     Facts

Petitioner was born on January 15, 1941. Pet. Ex. 1 at 16. Petitioner had an extensive medical history. *See generally* Pet. Ex. 1.

Petitioner's medical records indicate that she presented to Westfield Clinic at 2:45 PM on October 15, 2014. Pet. Ex. 1 at 51. Petitioner alleges that at this visit, she received an influenza vaccine in her hip. *See* "My Reasons For Not Pursuing a Diagnosis," filed as "Additional Documentation" [ECF No. 26] at 1.

On October 17, 2014, petitioner presented to Westfield Clinic, complaining of pain in her lumbar and thoracic pain. Pet. Ex. 1 at 56. The assessment was "1. Back pain – likely muscular." *Id*. at 57-58. Petitioner had a preexisting right upper quadrant mass; a comprehensive metabolic panel and ultrasound were ordered. *Id*.

Two days later, on October 19, 2014, petitioner presented to Scott & White Memorial Hospital, complaining of worsening right sided abdominal pain with right back, right neck and chest and right leg pain worsening for four days. Pet. Ex. 1 at 65. It was noted that petitioner had a history of fibromyalgia, "but pt states this is different than her normal pain." *Id*. Upon exam, it was noted that "[t]his pain is located to [right upper quadrant], and she does have a palpable liver there, this completely reproduces pain. However, it also radiates up into neck…She describes pain as tearing." *Id*. at 68. A CT of petitioner's abdomen showed "[m]ultiple large hepatic cysts." *Id*. at 76. The assessment was "Complex liver cyst in setting of worsening R sided abd pain. Unremarkable additional workup, pain controlled. Dc home w pcp f/u to workup Ct findings further. Return precautions for uncontrolled pain given." *Id*. at 67. Petitioner was discharged and instructed to follow up with her primary care physician.

On October 22, 2014, petitioner presented to Westfield Clinic complaining of right sided pain which started 6 days previously. Pet. Ex. 1 at 109. Petitioner's pain was "described as aching" and "at a severity of 7/10." *Id*. It was noted that petitioner "went to ER 3 days ago for this" and that petitioner's liver "has slightly enlarged." *Id*. Petitioner declined a referral to gastroenterology. It was noted that "Pt does not want medications and just wants to make sure 'everything is okay with my organs.'" *Id*. The assessment was "1. Right flank pain – Likely muscular in nature or costochondritis. – Pt declines any medications…" and "2. Hyperlipemia (sic)." *Id*. at 111.

On October 23, 2014, petitioner's husband called Westfield Clinic "for a referral requested to Neurology for his wife." Pet. Ex. 1 at 119. It was noted that Mr. Foxx "[s]aid they have seen [Westfield] about [petitioner's] intense pain serveral (sic) times and this Sunday she was taken to ER for this. Its (sic) come to the conclusion that she will need to be seen by Neurology and would like the referral ordered. Would like a call back." *Id*.

On November 5, 2014, petitioner presented to Dr. Mula, a neurologist at Temple Clinic, complaining of right lower thoracic pain. Pet. Ex. 1 at 122. It was noted that petitioner "has a history of chronic neck and low back pain for years and is not on any pain medication. She reports she has had a flu shot on October 15, 2014, she started noticing symptoms later that night. She had sharp pain which located in lower dorsal right thoracic region, it had sharp pain radiating dorsally to the right thoracic region to the right shoulder…She had the symptoms for next few days was seen in the ER and had a CT scan of the abdomen and pelvis which did not show acute abnormalities..." *Id*. The assessment was "1. Patient with episode of right thoracic pain but no evidence of rash/swelling: Likely from muscle spasm versus pleurisy, symptoms radiating to the right shoulder. Unclear etiology she did have a CT scan of the abdomen and pelvis. She symptomatically better. Discussed [o]btaining chest x-ray patient declined chest x-ray. Consider MRI of the thoracic spine if she continues to be symptomatic. Neurological exam is completely normal with no sensory level or evidence of rash on examination." *Id*. at 125.

On November 7, 2014, petitioner's husband called Temple Clinic, requesting "to speak with a nurse regarding a bruise in the area where patient's nerve pain originated. Husband wanted to also know if Dr. Mula would be able to take a look at the bruised area today and make an assessment." Pet. Ex. 1 at 130. A nurse "[s]poke to patient regarding the a (sic) bruise she noted to the right side. Per patient she sneezed and coughed and felt a sharp shooting pain to the right side…Spoke to provider who states this is probably due to muscle spasms." *Id*. A chest CT without contrast was ordered. *Id*.

Petitioner did not return to her primary care practice, Westfield Clinic, until June 15, 2015, when she presented complaining of "swelling and tingeling (sic) in legs, believes it is from Flu shot" and "pain in her right flank since getting a flu shot in October 2014....No cause for the pain has been found." Pet. Ex. 1 at 150. Additionally, petitioner "refuses to undergo additional imaging tests because of fear of radiation. She refuses dye test because of adverse reactions. She refuses to take medications because of adverse effects to that. She states that she wants an explanation for her problem." *Id*. Finally, it was noted that petitioner "wanted to show me [Dr. Henry at Westfield Clinic] the black spot on her flank….when I examined her I can find no discoloration of the skin no thickening but only an area of tenderness with palpation along the left flank…[Petitioner] insists she can see [the black spot] in the mirror this morning. Her husband cannot see this area either. This was examined with very bright light in (sic) informed her that I could see no changes in the skin and could feel no textural changes in the skin." *Id*. at 151. The assessment was "unspecified chest pain type" and "fibromyalgia." *Id*. at 152.

On July 13, 2015, petitioner presented to Westfield complaining of back pain and "discomfort in her right arm, right flank and right upper abdomen." Pet. Ex. 1 at 184. Petitioner stated that "she cancelled her neurology appointment" and that "she does not wish to undergo any further diagnostic testing or evaluations at this time. She [has] become very distrustful of physicians and is (sic) medications." *Id*. It was noted that petitioner "blames most her problems this year from the 'senior' influenza vaccine." *Id*.

On August 12, 2015, petitioner returned to her neurologist, Dr. Mula, complaining of "intermittent pain in her right thoracic region radiating down to right shoulder." Pet. Ex. 1 at 194. Additionally, petitioner complained of "elbow joint pain, bilateral wrist joint pain, ankle joint pain, [and] bilateral knee joint pain since a flu shot." *Id*. It was noted that petitioner complained

of a "tingling numbness sensation in bilateral calf and bilateral legs" for the last four months, and "intermittent swelling of her bilateral ankles." *Id*. Petitioner's neurological exam was completely normal. *Id*. at 197. The assessment was "paresthesias with no objective sensory loss on examination." *Id*. The recommendation was "nerve conduction studies, check vitamin B12, TSH, folic acid…check ANA and rheumatoid factor." *Id*. Petitioner's values for vitamin B12, TSH, and folic acid were within normal ranges. *Id*. at 202-203. Both her Rh factor and ANA were negative. *Id*. at 202. The nerve conduction study showed "normal nerve conduction studies in both lower extremities and the right upper extremity." *Id*. at 207.

On October 5, 2015, petitioner presented to Westfield Clinic for a "preventative/wellness visit." Pet. Ex. 1 at 216. An influenza vaccine was administered. *Id*. at 217.

On October 21, 2015, petitioner called Dr. Mula at Temple Clinic. Pet. Ex. 1 at 187-188. Petitioner spoke with a medical assistant; the call note states, "Because of severe dry mouth and eyes, my dentist, Dr. Kyle Frazier consulted with a Medical Dentist and did his own research. They said it could be Sjogren's Syndrome. In addition to the extreme dry mouth, I have this dryness in my nose, ears and other areas. I still have the pain, tingling and numbness in my legs and arms as I described to you. The pain in right arm is so severe that I can barely bend or twist it at the elbow to comb my hair. Dr. Frazier also said that a diagnostic procedure called a Lip Biopsy might confirm it. I have Chronic Neutropenia. I do not want to chance getting an infection. Would the recent tests such as the ANA and the Rheumatoid Factor Screen help to either confirm or rule out this diagnosis?" *Id*. at 187-188.

There are no medical records filed after this date.

## II.     Procedural History

Petitioner filed her petition as a *pro se* litigant along with medical records on June 29, 2015. Petition, ECF No. 1. This case was originally assigned to Chief Special Master Dorsey.[3] Notice of Assignment, ECF No. 3. The chief special master issued an initial order along with a list of attorneys who practice in the Vaccine Program, encouraging petitioner to seek representation from an attorney. Initial Order, July 22, 2015 [ECF No. 6]. The initial status conference was held on October 1, 2015; petitioner was provided with a list of the outstanding medical records and ordered to file a status report indicating whether she has retained counsel. Order, issued Oct. 2, 2015 [ECF No. 8].

This case was reassigned to me on October 19, 2015. Order Reassigning Case, filed Oct. 19, 2015 [ECF No. 10]. Randal Mathis filed a motion to substitute as petitioner's attorney on October 27, 2015. Motion to Substitute, filed Oct. 27, 2015 [ECF No. 13]. Petitioner filed a joint status report ["Pet. J.S.R."] requesting an additional sixty days to file petitioner's outstanding medical records. Pet. J.S.R., filed Nov. 30, 2015 [ECF No. 16]. This request was granted. Petitioner requested two additional extensions of time to file medical records; both were granted. Pet. J.S.R., filed Jan. 29, 2016 [ECF No. 17]; Pet. J.S.R., filed Apr. 12, 2016 [ECF No. 20]. Petitioner filed medical records via CD on April 19, 2016. Petitioner's Exhibits ["Pet. Ex."] 1-6, filed Apr. 19, 2016 [ECF No. 22]. Petitioner filed documentation indicating that her VAERS

---

[3] Special Master Dorsey was elevated to Chief Special Master on September 1, 2015.

Report could not be obtained on May 13, 2016. Pet. Ex. 7, filed May 13, 2016 [ECF No. 23]. Petitioner filed her amended petition ["Am. Pet."], her birth certificate, and her affidavit on May 27, 2016. Am. Pet., Pet. Ex. 8-9, filed May 27, 2016 [ECF No. 24].

A status conference was held on June 23, 2016, in which respondent's counsel noted that petitioner had not yet submitted medical records with a definitive diagnosis of petitioner's alleged injuries. Petitioner was instructed to file "any documents that provide a definitive diagnosis of petitioner's alleged injury" and a statement of completion. Order, issued June 23, 2016 [ECF No. 25]. Petitioner's counsel filed as "Additional Documentation" a statement written by petitioner which she titled "My Reasons For Not Pursuing A Diagnosis." Additional Documentation, filed Jul. 13, 2016 [ECF No. 26].

A status conference was then held in which I noted that, instead of filing medical records "containing a definitive diagnosis," as ordered, "petitioner filed her own statement saying that she was administered the flu vaccine in her hip and all of her current health issues were caused by [the influenza] vaccine." Order, issued Aug. 9, 2016 [ECF No. 27]. I also noted that "petitioner's records demonstrate that she has a lengthy history of health problems that far pre-date the allegedly causal vaccination." *Id*. Petitioner's counsel "stated that his client does not want to return to a doctor and understands that the court could dismiss her claim." Accordingly, I instructed petitioner's counsel to file either a motion for a dismissal decision or a motion for a ruling on the record. *Id*.

Petitioner then filed a motion requesting a dismissal of her petition. Motion For Decision Dismissing the Petition, filed Aug. 30, 2016 [ECF No. 28]. Accordingly, I issued a dismissal decision. Decision, filed Aug. 30, 2016 [ECF No. 29].

Petitioner filed a Motion for Attorney's Fees requesting attorneys' fees and costs in the amount of $13,815.44. Motion for Attorney's Fees ["Motion for Fees"], filed Nov. 2, 2016 [ECF No. 32]. In accordance with General Order #9, petitioner's counsel represents that petitioner incurred $579.00 in out-of-pocket expenses. *Id*. at 1. Respondent filed a response to the motion on November 21, 2016. Response to Motion for Attorney's Fees ["Response"], filed Nov. 21, 2016 [ECF No. 33]. Petitioner filed a reply to respondent's response on November 22, 2016. Reply to Response to Motion ["Reply"], filed Nov. 22, 2016 [ECF No. 34]. This matter is now ripe for decision.

### III.   Applicable Law

In general, the Vaccine Act allows Special Masters to award attorneys' fees and costs to a petitioner if the claim was brought in good faith and with "reasonable basis." § 15(e). Special masters are afforded considerable discretion when considering motions for fees. For instance, it is within a special master's discretion to reduce fees *sua sponte*, without warning to petitioners. *Sabella v. Sec'y of HHS*, 86 Fed. Cl. 201, 208-09 (2009).

When considering motions for attorney fees and costs, the Court employs the lodestar method to determine the amount an attorney should be compensated for. *Schueman v. Sec'y of HHS*, No. 04-693V, 2010 WL 3421956, at *3 (Fed. Cl. Spec. Mstr. Apr. 27, 2016); *see also*

*Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.") (internal citations omitted). That said, a special master is not required to conduct a "line-by-line" analysis of a fee request. *Broekelschen v. Sec'y of HHS*, 102 Fed. Cl. 719, 729 (2011). Additionally, a special master is "entitled to use…prior experience in reviewing fee applications," including experience with particular attorneys. *Riggins v. Sec'y of HHS*, 406 Fed. Appx. 479, 481 (Fed. Cir. 2011) (citing *Saxton v. Sec'y of HHS*, 3 F.3d 1517, 1519 (Fed. Cir. 1993)).

The recent decision in *McCulloch* provides a framework for consideration of appropriate rate ranges for fees for forum attorneys, based on the experience of a practicing attorney.[4] *McCulloch v. Sec'y of HHS*, No. 09-293, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015); motion for recons. denied, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). According to *McCulloch*, if an attorney has been practicing for 20 or more years, an appropriate range is approximately $350 to $425 per hour. *Id.* If an attorney has 11 to 19 years of experience, $300 to $375 is proper. *Id.* An appropriate range for an attorney with 8 to 10 years of experience would be $275 to $350. *Id*. For 4 to 7 years of experience, $225 to $300 is sufficient. *Id.* If an attorney has fewer than 4 years of experience, he/she should receive between $150 and $225. *Id.*

In determining an appropriate hourly rate, Special Master Gowen concluded that the following factors should be considered: (1) the prevailing rate for comparable legal work in the forum of Washington, D.C.; (2) the prevailing rate for cases in the Vaccine Program; (3) the attorney's experience in the Vaccine Program; (4) the attorney's overall legal experience; (5) the quality of the work performed in vaccine cases; and (6) reputation in the legal community and community at large. *Id*. at *17.

## IV.   Discussion

Petitioner's counsel properly filed a Motion for Attorneys' Fees and Costs on November 2, 2016, requesting $13,019.50 in attorneys' fees and $795.94 in costs, for a total of $13,815.44. Motion at 1. In her response, respondent objected first to reasonable basis, and second to the amount of fees requested. Respondent asserted that, should the special master decide to award fees, an appropriate fee award would fall between $4,000 and $6,000. Response at 3. Petitioner filed a reply, reiterating that her application for fees and costs is reasonable, and stating that "both Petitioner and the Court benefitted from Mr. Mathis and his law firms' involvement." Reply at 1.

---

[4] The Office of Special Masters has taken the *McCulloch* rates, which have been endorsed by all of the current special masters, and has posted them on its website to provide direction to counsel in future cases about appropriate forum ranges. The OSM Attorneys' Forum Hourly Rate Fee Schedule for 2015-2016 is accessible at the Court of Federal Claims website under "Vaccine Claims."

1. **Challenges to reasonable basis**

The Vaccine Act permits an award of reasonable attorneys' fees and costs if the petition was "brought in good faith and there was a reasonable basis." 15(e)(1). Reasonable basis is typically viewed as "an objective standard determined by the 'totality of the circumstances.'" *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014) (citations omitted). Some of the factors considered when assessing reasonable basis include: "'the factual basis, the medical support, jurisdiction issues', and the circumstances under which a petition is filed." *Chuisano*, 116 Fed. Cl. at 288 (citing *Di Roma*, 1993 WL 496981, at *1). Additionally, a special master may consider "whether counsel filed the claim or whether the petitioner acting *pro se* filed the claim before retaining counsel." *Turner v. Sec'y of HHS*, No. 99-544V, 2007 WL 4410030 (Fed. Cl. Spec. Mstr. Nov. 30, 2007), at *6. Neither the fact that no medical records or supportive expert opinion was filed nor the fact that the claim was filed beyond the statute of limitations automatically negates a finding of reasonable basis. *Chuisano*, 116 Fed. Cl. at 288 (citations omitted). Furthermore, "[a] looming statute of limitations does not forever absolve a petitioner from his or her obligation to proceed with a reasonable basis to support his claim, at least not if the petitioner hopes to recover any fees and costs." *Id.* at 287 (citations omitted).

The Vaccine Act's "provision authorizing attorney fees and costs in unsuccessful cases" has been described as "extraordinarily generous." *Austin v. Sec'y of HHS*, No. 10-362V, 2013 WL 659574 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) at *8. Likewise, special masters have been "quite generous" in finding reasonable basis. *Turpin ex rel. Turpin v. Sec'y of HHS*, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). This generosity derives directly from one of the "underlying purposes" of the Vaccine Act – "to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1352 (Fed. Cir. 2008) (citing *Saunders v. Sec'y of HHS*, 25 F.3d 1031, 1035 (Fed Cir. 1994)). Encouraging professional representation of petitioners in the Vaccine Program benefits both the petitioner and the Program itself; indeed, an increase in "the number of *pro se* petitioners would have a deleterious effect both inside and outside of the Vaccine Program…Due to their lack of legal training, *pro se* petitioners require more attention from specials masters, assistant clerks in the Clerk's Office, and, probably, attorneys within the Department of Justice." *Hamrick v. Sec'y of HHS*, No. 99-683V, 2007 WL 4793152 (Fed. Cl. Spec. Mstr. Jan. 9, 2008) at *6. Furthermore, a special master himself suggested the argument that a law firm representing a petitioner "should be compensated for its reasonable efforts in representing [a petitioner] simply to encourage attorneys to represent petitioners, who would otherwise appear pro se." *Chuisano v. Sec'y of HHS*, No. 07-452V, 2013 WL 6234660 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) at *17 (citations omitted).

In the present matter, petitioner filed her claim as a *pro se* litigant in June of 2015. Mr. Mathis substituted in as counsel on October 27, 2015 and requested additional time within which to collect outstanding medical records.[5] An amended petition, along with petitioner's affidavit,

---

[5] The undersigned would like to distinguish this matter from *Mounts v. Sec'y of HHS*, No. 14-1219, 2016 WL 4540344 (Fed. Cl. Spec. Mstr. Jul. 27, 2016) aff'd Ct. Fed. Cl. Special Master Hamilton-Fieldman denied attorney's fees due to a lack of reasonable basis. In *Mounts*,

7

was filed on May 27, 2016. Multiple medical records had been filed throughout the previous months.

At a status conference held on June 23, 2016, Mr. Mathis candidly and openly discussed this matter. Mr. Mathis ultimately filed a Motion to Dismiss. In response to Mr. Mathis's fee application, respondent questioned "whether there was a reasonable basis for petitioner's claim." Mr. Mathis substituted in as counsel to assist a *pro se* petitioner in a petition that had already been filed six months before. He gathered the outstanding medical records over a seven month period, and in doing so, realized that the medical records would not support petitioner's claim. He then filed a Motion to Dismiss.

Mr. Mathis' representation of petitioner was beneficial to all parties in this matter. Mr. Mathis advocated for petitioner until it was no longer feasible, and then filed a Motion to Dismiss. Petitioner benefitted by receiving professional legal counsel, and both respondent and the Court benefitted from Mr. Mathis' candor with the court and timely dismissal of petitioner's claim. Therefore, the undersigned finds that an award of attorneys' fees and costs is appropriate in this matter.

### 2. Challenges to amount of fees requested

In her response, respondent provided no specific objection to the amount requested or the hours worked in this matter, but instead offered a range which she believed reasonable for attorneys' fees. Response at 3. Respondent "reminded" the Court of its discretion in awarding fees, quoting *Fox v. Vice*, and reiterated the fact that 'the determination of [attorneys'] fees "should not result in a second major litigation."' Response at 2-3. Respondent proceeded to claim that a "reasonable" amount for fees and costs in this case would fall between $4,000.00 and $6,000.00, without specifically addressing how that range applied to this particular matter.

I note that petitioner's counsel has submitted rates for himself and his staff that are beyond the rates as set forth in *McCulloch*. Therefore, the submitted rates must be reduced. Petitioner's counsel, Randal Mathis, submitted billing at a rate of $435 per hour for himself, $190 per hour for associate attorney Anh Tran, and $160 per hour for paralegal Julie Bayless. Mr. Mathis practices in Dallas, TX, which has previously been determined to be a forum jurisdiction. See *Tieu Binh Le v. Sec'y of HHS*, No. 07-895V, 2014 WL 4177331, at *3-4 (Fed. Cl. Spec. Mstr. July 31, 2014) (finding that the Dallas-Fort Worth region is a forum jurisdiction); *see also Harborth v. Sec'y of HHS*, No. 08-777V, 2016 WL 3561713, at *3-4 (Fed. Cl. Spec. Mstr. May 18, 2016) (finding a Fort Worth attorney entitled to the forum rate).

Mr. Mathis has been practicing for 36 years; according to the OSM Attorneys' Forum Hourly Rate Fee Schedule, Mr. Mathis falls in the range of $385 to $430 per hour for attorneys

---

petitioner's attorney failed to seek out petitioner's medical records, which would have demonstrated a lack of reasonable basis, before filing the petition on petitioner's behalf. In the present matter, petitioner had already filed as a *pro se* litigant before Mr. Mathis undertook representation of petitioner.

with more than 31 years of experience. Motion at 16. He has been practicing in the Vaccine Program since 2012 and has represented three petitioners in the Program. Attorneys with less experience in the Program should be awarded rates at the lower end of the appropriate fee range; therefore, I award Mr. Mathis hourly rates of $385 for work performed in 2015 and $400 for work performed in 2016.[6]

Petitioner has requested an hourly rate of $190 for Mr. Mathis's associate, Ms. Tran. Ms. Tran has been practicing since 2014; therefore, she falls in the range of $150 to $225 per hour for attorneys with less than 4 years of experience. Attorneys with less experience should be awarded rates at the lower end of the appropriate fee range; therefore, I award Ms. Tran hourly rates of $150 for work performed in 2015 and $156 for work performed in 2016.[7]

Petitioner has requested an hourly rate of $160 for Mr. Mathis's paralegal, Mrs. Bayless. Paralegals receiving forum rate are eligible for an hourly rate between $125 and $145. I find appropriate hourly rates for Mrs. Bayless to be $125 for work performed in 2015 and $130 for work performed in 2016.

Having reviewed the billing records, the amount of hours billed seems reasonable and I see no erroneous or duplicative billing. *See generally* Motion. I find, therefore, that $10,997.10 in attorneys' fees and $795.94 in attorneys' costs are appropriate and reasonable in this matter.

## V.    Conclusion

For the reasons contained herein, **I award a lump sum of $579.00 in the form of a check payable to petitioner, Nettie Foxx; and a lump sum of $11,793.04, representing reimbursement for all attorneys' fees and costs available under § 15(e)(1), in the form of a check payable jointly to petitioner, Nettie Foxx, and petitioner's counsel, Randal Mathis.**

The clerk of the court shall enter judgment in accordance herewith.[8]

**IT IS SO ORDERED.**

s/Mindy Michaels Roth
Mindy Michaels Roth
Special Master

---

[6] Mr. Mathis's hourly rate for work performed in 2016 is simply his 2015 hourly rate of $385 adjusted upwards by 3.7%, as prescribed by *McCulloch*.

[7] Ms. Tran's hourly rate for work performed in 2016 is simply her 2015 hourly rate of $150 adjusted upwards by 3.7%, as prescribed by *McCulloch*.

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.